648 A.2d 1245

**AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, Petitioner,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 10, 1994.

Decided Aug. 1, 1994.

Publication Ordered Oct. 24, 1994.

Catherine E. Walters, for petitioner.

Maibeth Wilt–Seibert, Asst. Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before COLINS and NEWMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

American General Life and Accident Insurance Company (Employer) petitions for review of two orders of the Unemployment Compensation Board of Review (Board) which affirmed the referee's grant of benefits to Frank V. Paini (Claimant).[1] The first order[2] dealt with financial eligibility

1. By Order dated 3/17/94, these cases were consolidated for review by this Court.

2. This appeal of Employer is at No. 56 C.D. 1994.

and the second order[3] dealt with the issue of willful misconduct.

Claimant was employed as a sales representative by Employer from February 24, 1992, until June 24, 1993. In May of 1993, Employer audited Claimant's accounts for May and discovered discrepancies. Claimant had collected premiums and credited them to the wrong accounts.[4] On June 24, 1993, Claimant was discharged on the basis of willful misconduct for misapplying monies.

Following his termination, Claimant applied for unemployment compensation benefits. On July 19, 1993, the Lehigh Valley Job Center (Job Center) issued a notice of financial determination finding Claimant to be financially eligible for unemployment compensation benefits pursuant to the Unemployment Compensation Law (Law),[5] under Sections 401(a)[6], 404(c)[7], and 404(e)[8] at a weekly rate of $146.00. On July 20, 1993, the Job Center issued a notice of determination finding Claimant ineligible for unemployment compensation benefits

3. This appeal of Employer is at No. 57 C.D. 1994.

4. Claimant had mistakenly recorded premiums to the wrong accounts in about twenty-five (25) cases out of four hundred (400) accounts. In addition, Claimant's accounts were short about $98.00, and he had failed to turn in his premiums on the required dates.

5. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751–914.

6. Section 401(a), 43 P.S. § 801(a), provides:

Compensation shall be payable to any employee who is or becomes unemployed, and who—
(a) Has, within his base year, been paid wages for employment as required by section 404(c) of this act.... (Footnote omitted.)

7. Section 404(c), 43 P.S. § 804(c), provides that employees must have sufficient qualifying wages under the table specified for Determination of Rate and Amount of Benefits in Section 404(e), 43 P.S. § 804(e), and have sufficient number of "credit weeks" during the base year in order to be eligible for any amount of compensation benefits.

8. Section 404(e), 43 P.S. § 804(e), is a table for benefits which determines the rate and amount of compensation provided to a claimant on the basis of highest quarterly wage, rate of compensation, and qualifying wages.

pursuant to the willful misconduct provisions of Section 402(e) [9] of the Law.

On appeal, the referee affirmed the financial determination of the Job Center, modifying the weekly benefit rate to $270.00. The referee reversed the Job Center's determination that denied benefits to Claimant, finding that Claimant's actions did not rise to the level of willful misconduct and that he was, therefore, entitled to benefits pursuant to Section 402(e) of the Law.

On December 8, 1993, the Board affirmed the decision of the referee as to Claimant's financial eligibility, modified the weekly benefit rate to $252.00, and also affirmed the referee's decision to grant benefits to Claimant.

On appeal to this Court,[10] Employer presents two issues for our consideration. First, Employer asserts that the Board disregarded evidence in the record and made findings of fact not supported by substantial evidence when it based its financial eligibility and weekly benefit rate determinations upon commissions earned by Claimant in employment not covered under the Law. Second, Employer asserts that the Board's finding that Claimant's conduct did not constitute willful misconduct is not supported by substantial evidence.

In essence, Employer's first assertion actually embodies two separate arguments. One, Employer argues that the Board committed an error of law in its interpretation of the statutory law relating to calculation of base year wages and weekly

9.  Section 402(e), 43 P.S. § 802(e), provides:
   An employee shall be ineligible for compensation for any week
   . . . .
   (e) in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this Act.

10.  Our scope of review is limited to determining whether constitutional rights have been violated, whether errors of law have been committed, or whether necessary findings are supported by substantial evidence. *Phoebus v. Unemployment Compensation Board of Review,* 132 Pa.Commonwealth Ct. 518, 573 A.2d 649 (1990).

benefit rates. Two, Employer argues that the Board's Finding of Fact No. 12 is not supported by substantial evidence.

In its financial eligibility decision, the Board made the following relevant findings of fact:

2. Claimant was paid a salary of $325.00 a week for a set number of weeks at the start of his employment, following which he was paid a varying rate of commission, plus bonuses.

.    .    .    .    .

5. Claimant filed an application for unemployment benefits effective June 20, 1993, thereby establishing a base year from January 1 to December 31, 1992.

.    .    .    .    .

8. For weeks of February 24, 1992, through July 27, 1992, claimant was paid a weekly salary of $325.00.

9. Beginning with August 3, 1992, through the end of December 1992, claimant was paid on a varying commission basis, plus a bonus on December 28, 1992.

10. Claimant's regular pay day was every Friday.

.    .    .    .    .

15. During claimant's base year he had the following gross wages and commission earnings, plus a bonus in this employment:

| | |
|---|---|
| 1st Quarter of 1992 | $1,625.00 |
| 2nd Quarter of 1992 | 4,225.00 |
| 3rd Quarter of 1992 | 5,557.55 |
| 4th Quarter of 1992 | 6,261.90 |

16. Claimant had total base year earnings of $17,669.45 and higher quarter wages of $6,261.90.

As to the error of law portion of the first argument, Employer specifically argues that since Claimant was paid a salary only for the first twenty-three weeks of his base year, then pursuant to Section 4($l$)(4)(17), 43 P.S. § 753($l$)(4)(17), only the wages earned for those first twenty-three weeks should be included in his base year when calculating Claim-

ant's weekly benefit rate, excluding all of Claimant's wages earned by commission during his base year. Section 4(*l*)(4)(17) states in pertinent part:

(4) The word "employment" shall not include—

. . . . .

(17) Service performed by an individual for an employer as an insurance agent ... or as an insurance solicitor ... if all such service performed by such individual for such employer is performed for remuneration solely by way of commission . . .

This Section has been interpreted by this Court in *American General Life v. Unemployment Compensation Board of Review,* 147 Pa.Commonwealth Ct. 698, 609 A.2d 618 (1992). In *American General Life,* the claimant had been paid a salary before her base year began, but had been remunerated solely by way of commission during her base year. The Board had reversed the decision of the referee and granted benefits to the claimant because *all* of the services performed by the claimant for the employer had not been performed for remuneration solely by way of commission. On appeal, however, this Court concluded that the claimant could not be eligible for benefits because her salary had been paid before her base year. In interpreting Section 4(*l*)(4)(17), we determined it to mean that in unemployment compensation law, an individual's benefits depend solely upon his or her earnings during the base year. *American General,* 147 Pa.Commonwealth Ct. at 700, 609 A.2d at p. 619.

In this case, Claimant was paid a salary for the first twenty-three weeks beginning his base year. *See* R.R. at p. 105a–106a. Therefore, his salary was paid during his base year, and he had not been remunerated solely by way of commission during his base year. Therefore, the Board was correct in including Claimant's commission wages in its calculations for benefits. Thus, the Board, in interpreting Section 4(*l*)(4)(17) as it was interpreted in *American General Life,* committed no error of law in its calculation of Claimant's base year wages and weekly benefit rate.

■ As to the substantial evidence portion of the first argument, we first note that in unemployment compensation cases the findings of the Board are conclusive on appeal if the record contains substantial evidence to support those findings. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977). Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985).

■ Herein, Employer specifically argues that Claimant did not receive his bonus check before the end of the last quarter of 1992, as found by the Board in Finding of Fact No. 12. Finding of Fact No. 12 states:

12. Claimant received all of his pay for the last quarter of 1992 in the last quarter of 1992.

The record reveals that Claimant presented testimony, to which there was no objection, that his last quarterly checks were dated for the last Monday in December, December 28, 1992, and that he received those checks on December 31, 1992, because he was not obligated to come in to work on January 1, 1993. *See* R.R. at pp. 91a–93a.

Furthermore, Employer's witness also testified that all of the employees were paid on December 30, 1992, or December 31, 1992, before the end of the year. *See* R.R. at p. 93a. Clearly, there is substantial evidence to support the Board's finding that Claimant received all of his pay before the last quarter of 1992 ended.

■ We next turn our attention to the second issue before this Court, which is whether the Board's finding that Claimant's conduct did not constitute willful misconduct is supported by substantial evidence.

Willful misconduct has not been statutorily defined; however, it has been judicially interpreted to mean an act of wanton or willful disregard of an employer's interests, a deliberate violation of an employer's rules, or a disregard of the standards of behavior which the employer has a right to expect of

an employee. *See Giglio v. Unemployment Compensation Board of Review*, 126 Pa.Commonwealth Ct. 471, 560 A.2d 271 (1989).

Whether a claimant's actions constitute willful misconduct so as to render him ineligible for benefits is a question of law subject to review by this Court. *Phoenixville Area School District v. Unemployment Compensation Board of Review*, 141 Pa.Commonwealth Ct. 555, 596 A.2d 889 (1991), *appeal denied*, 529 Pa. 671, 605 A.2d 335 (1992). The general rule is that it is the employer who bears the burden of proving willful misconduct on the part of an employee. *Hartley v. Unemployment Compensation Board of Review*, 40 Pa.Commonwealth Ct. 371, 397 A.2d 477 (1979).

The Board made the following relevant findings of fact regarding Claimant's conduct:

8. Claimant's $98.00 shortage was human error, did not occur through any intent or design of claimant's, and was repaid to the employer by claimant when the shortage was discovered.

9. As a result of the audit, the employer believed that claimant had not turned in premiums which he had collected in timely fashion. Premiums are to be turned in twice a week on Tuesdays and Fridays. Employer believed claimant had withheld money for two or three weeks.

10. Sales agents are not permitted to turn in postdated checks. The agent is to hold such postdated checks until their date comes up and then turn them in.

11. Some of the premiums which claimant had not yet turned in were postdated checks.

12. Premium monies amounting to about $1,300.00 were turned in by claimant in timely fashion and were put in an escrow account at the office where they remained for approximately two weeks.

13. Claimant had been in the insurance business for over seventeen years and has never had any problems.

14. The employer considers claimant to have been a good employee and had no problems with him throughout his employment except for the discrepancies during the month of May 1993.

15. Claimant was discharged for the errors which turned up in the audit.

16. Claimant worked to the best of his ability and his errors were unintentional.

17. Claimant did not intentionally violate any employer rules.

Review of the record reveals that Claimant testified that his failure to correctly record the premiums and turn them in, and his short accounts of $98.00 resulted from mistakes, forgetfulness, and accounting errors. *See* R.R. at pp. 119a, 120a, 122a, 123a. Additionally, Employer neither objected to this testimony, nor gave any testimony to establish willful misconduct by Claimant. Because the Board's findings as to Claimant's conduct were supported by substantial evidence, the determination of the Board will not be disturbed.

Accordingly, we affirm the orders of the Board both as to financial eligibility and as to the issue of willful misconduct.

## ORDER

AND NOW, this 1st day of August, 1994, the orders of the Unemployment Compensation Board of Review are affirmed.