Michael W. KELLY, Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 8, 2003.

Decided Jan. 8, 2004.

Keith E. Kendall, Harrisburg, for petitioner.

Randall S. Brandes, Harrisburg, for respondent.

BEFORE: FRIEDMAN, Judge, and COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN.

Michael W. Kelly (Claimant) petitions for review[1] of an order of the Unemployment Compensation Board of Review (Board) that affirmed a referee's determination that Claimant was ineligible for unemployment compensation benefits under the Unemployment Compensation Law (Law)[2] because he was not "unemployed" as that term is statutorily defined. The order appealed also concluded that Claimant was subject to a fault overpayment of $9,570.00,[3] for failing to report his earnings and employment to the job center.[4]

The referee found that, after losing his full-time sales manager position in November of 2001, Claimant applied for unemployment compensation, and the Office of Employment Security (OES) determined that Claimant was eligible for benefits. Beginning January 1, 2002, while still receiving unemployment compensation, Claimant began working *full-time* in real estate sales, with pay on a commission only basis. While in this position, he continued to file for and receive unemployment compensation benefits on a regular basis. Claimant finally earned his first commission from his real estate sales on April 17, 2002, and he reported the resulting $471.00 in earnings to his local job center.[5]

Subsequently, OES determined that Claimant had been ineligible for unemployment compensation benefits for the weeks ending January 5, 2002, through June 15, 2002, because he had not been "unemployed" during that period. Finding that Claimant was working full-time as of January 1, 2002, albeit on a commission only basis, OES concluded that Claimant had not been entitled to receive benefits after that date. In addition, OES determined that Claimant was subject to a fault overpayment and was also subject to an additional twenty-five-week period of disqualification pursuant to Section 801(b) of the Law, 43 P.S. § 871(b).[6] (O.R., Item 4.)

Claimant appealed. According to the Notice of Hearing sent to Claimant, the specific issues to be considered in his ap-

---

1. This case was reassigned to the opinion writer on November 4, 2003.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751–914.

3. Section 804(a) of the Law, 43 P.S. § 874(a), provides in pertinent part:

 Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue. . . .

4. On appeal, the Board found that there had been no earnings to report until April 17th, but that Claimant had failed to report that he was now working full-time as a real estate salesperson on a commission basis.

5. Claimant's benefits were ultimately exhausted on June 15, 2002.

6. Section 801(b) of the Law provides, in pertinent part:

 Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase any compensation or other payment under this act ... may be disqualified in addition to such week or weeks of improper payments for a penalty period of two weeks and for not more than one additional week for each such week of improper payment.

 43 P.S. § 871(b).

peal were: (1) whether Claimant was unemployed under Sections 401 and 4(u) of the Law; (2) whether Claimant was subject to an additional period of disqualification under Section 801 of the Law on the basis he had made a false statement in his application for benefits; and (3) whether Claimant received benefits to which he was not entitled and, if so, whether the fault or non-fault provisions of Section 804 of the Law should govern the recoupment of such compensation. (O.R., Item 6.)

With regard to Claimant's eligibility for benefits under Sections 401 and 4(u) of the Law, the referee, like the OES, determined that because Claimant was involved in real estate sales on a full-time basis, he was no longer "unemployed" as of January 1, 2002,[7] notwithstanding the fact that he was paid solely by commission. The referee also determined that, because Claimant improperly received unemployment compensation due to his failure to report his employment, he was subject to the fault provisions of Section 804(a) of the Law. However, concluding that Claimant did not deliberately fail to disclose this information, the referee did not impose penalties under Section 801(b) of the Law.

Claimant then appealed to the Board, which, after adopting the referee's findings and conclusions in their entirety, made an additional determination. Noting that Claimant took a position as an independent contractor as of January 1, 2002, it concluded that, in addition to being ineligible under Section 4(u) of the Law, Claimant "would also be ineligible for benefits under Section 402(h) and 4($l$)(2)[(B)] of the Law (pertaining to self employment and independent contractors.")[8] (O.R., Item 10.) Claimant now appeals to this Court.[9]

First, Claimant argues that the Board erred in determining that he was ineligible for unemployment compensation benefits during the period in question on the basis that he was not "unemployed." To the contrary, Claimant contends that he remained "unemployed" throughout his entire benefit period and, thus, received no benefits to which he was not entitled. He also asserts that he should not have been subject to a fault overpayment because the record does not support the notion that he engaged in any conduct justifying such a sanction.

### Was Claimant "Unemployed?"

Section 401 of the Law provides that compensation shall be payable to "any employe who is or becomes *unemployed* ..." (emphasis added). There is no dispute that Claimant became unemployed in November of 2001, when he lost his sales

7. The referee's decision actually states that Claimant "became fully *un employed* as of ... January 1, 2002, given his real estate activities." (Referee's op., O.R., Item 8) (emphasis added). The referee's typographical error was noted in the Board's decision, wherein it states "the decision should read the claimant became fully *employed* as of January 1, 2002, given his real estate activities." (O.R., Item 10) (emphasis added).

8. We note that the issue of self-employment was not included in the Notice of Hearing sent to Claimant; therefore, he received no notice that he might be considered ineligible for benefits under these Sections, and he had no opportunity to prepare a defense against such a ruling. However, because of our disposition our this case, we need not reach the issue of self-employment and, therefore, any due process violation stemming from this lack of notice is harmless.

9. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Greenawalt v. Unemployment Compensation Board of Review*, 117 Pa.Cmwlth. 96, 543 A.2d 209 (1988).

manager job; the question is whether he *remained* unemployed after taking the real estate sales job in January 2002. Section 4(u) of the Law defines the term "unemployed" as follows:

**An individual shall be deemed unemployed (I) with respect to any week** (i) during which he performs no services for which remuneration is paid or payable to him and **(ii) with respect to which no remuneration is paid or payable to him,** or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

43 P.S. § 753(u) (emphasis added).

 In spite of his considerable efforts, the record is clear that, with the exception of one week in April of 2002, Claimant received no remuneration during the period in question. *However,* Claimant did perform services for which remuneration could *eventually* be payable to him. A commission is a fee earned by an agent for transacting an item of business. *See* MERRIAM-WEBSTER COLLEGIATE DICTIONARY 230 (10th ed.2001). The fee is normally a percentage of the money received by the agent responsible for conducting the business. *Id.* Thus, in such an arrangement, the fee cannot even be calculated, much less paid, until the transaction is completed. Therefore, all such work is performed with an expectation of payment in the future. Thus, we conclude that Claimant, because he worked on a commission basis, was not "unemployed" as that term is statutorily defined.

Case law supports this result. Both *Myers v. Unemployment Compensation Board of Review,* 101 Pa.Cmwlth. 149, 515 A.2d 1013 (1986), and *Jeter v. Unemployment Compensation Board of Review,* 78 Pa.Cmwlth. 279, 467 A.2d 418 (1983), state that the expectation of possible future benefits can constitute remuneration as intended by Section 4(u).

In *Myers,* the claimant lost her previous job under circumstances that were not disqualifying. She then began performing administrative services for a different employer on a voluntary basis; in fact, the employer told her that she would not be paid for these services because there was no money coming in. However, the claimant was informed that, if the employer started to make sales in the future, the claimant would receive a commission based upon those sales. Notwithstanding the employer's assertion that it would not pay her for her work as an administrator before there were any sales, the claimant submitted an invoice for her "volunteer" services, which the employer paid. In *Myers* the claimant *did not even challenge,* on appeal, the finding that she was employed. Rather, the issue in the case was whether the Board erred in assessing a fault overpayment. The Court held that it had and reversed on that basis.

In *Jeter,* the claimant worked as the executive director of a welfare rights organization and was paid from funds received under a public contract. When the contract was not initially renewed, the claimant was laid off due to a lack of funds. However, the claimant continued to perform her job voluntarily based on her supervisor's promise that she would be paid for those services if the contract was renewed. Subsequently, it was and the claimant received a "bonus" equal to the salary she would have received if there had been no interruption in the contract. The Court held that "Claimant . . . can only be said to be performing services upon the expectation of receiving a possible future benefit, and . . . she, therefore, was not "unemployed" within the intendment of Section 4(u) of the Law." *Id.* at

420. Thus, the claimant received remuneration in the future for services attributable to services performed earlier in time and for which there was no initial guarantee that she would ever be paid. This is precisely what occurs when one works on a commission basis, such as in the matter *sub judice*.

Both *Myers* and *Jeter*, in turn, cite to *Unemployment Compensation Board of Review v. Miedama*, 27 Pa.Cmwlth. 207, 365 A.2d 900 (1976). In *Miedama*, the claimant lost her job with one travel agency and agreed to "volunteer" her services at another travel agency in exchange for the use of their facilities, which enabled her to continue to participate in her profession and retain her clients. We concluded that, although the claimant was not paid for her services at the new agency, she did receive a form of "remuneration" and, therefore, was not "unemployed" within the definition of Section 4(u). However, in order to reach that conclusion, the Court had to accept the underlying premise that one could perform work in the present, *based only upon an expectation of remuneration in the future*, and that, in such a situation, the person was not "unemployed" within the meaning of the Section 4(u) of the Law.[10]

### Was Claimant "At Fault?"

■ We turn now to the question of whether imposition of a fault overpayment was proper. The word "fault" within the meaning of Section 804(a) of the Law connotes "an act to which blame, censure, impropriety, shortcoming or culpability attaches...." *Greenawalt v. Unemployment Compensation Board of Review*, 117 Pa. Cmwlth. 96, 543 A.2d 209, 211 (1988) (quoting *Cruz v. Unemployment Compensation Board of Review*, 110 Pa.Cmwlth. 117, 531 A.2d 1178, 1180 (1987)). Conduct that is designed improperly and intentionally to mislead the unemployment compensation authorities is sufficient to establish a fault overpayment. *Greenawalt*. To find fault, the Board must make some findings with regard to a claimant's state of mind. *Id.*

■ In the case *sub judice*, the record is completely devoid of any findings that would demonstrate any "fault" on Claimant's part. To the contrary, the referee found that Claimant "did not knowingly withhold material information from the service center nor did he knowingly pro-

---

**10.** Claimant also argues that he is entitled to benefits under Section 4(*l*)(4)(17) of the Law, 43 P.S. § 753(*l*)(4)(17). While there is some dispute as to whether this issue has been raised, we will address the question because the dissent does so. This Section provides, in pertinent part, "[t]he word 'EMPLOYMENT' shall not include ... Service performed by an individual for an employer as ... a real estate broker ..., if all such service performed by such individual for such employer is performed for remuneration solely by way of commission...." Under Section 401 of the Law, 43 P.S. § 801, the rule is that "[c]ompensation shall be payable to any employe who is or becomes *unemployed*, and who (a) [h]as, within his base year, been paid wages for *employment* as required by section 404(c) of this act...." (Emphasis added.) Claimant, therefore, must have earned wages during his base year in "employment," as defined by the Law, in order to receive benefits. At the point where Claimant lost his job as a sales manager/employee, he met this criterion and was, thus, financially eligible for benefits initially. *However*, once he began his full-time real estate work, he was no longer "unemployed" under Section 4(u) of the Act and it is *this* provision that operates to preclude him from receiving benefits. While this may seem harsh, we cannot help but note that a real estate sales person separated initially from employment, where he was working solely on a commission basis, would also be denied benefits under Sections 401(a) and 4(*l*)(4)(17). The reason would be the lack of base year wages. This is because full-time real estate work performed only on a commission basis is specifically excluded under the definition of "employment."

vide false information to receive compensation not due." (referee's Findings of Fact, Nos. 7 and 10, O.R., Item 8.) This finding is supported by Claimant's undisputed testimony. Thus, the referee and the Board erred in concluding that Claimant received an overpayment because of his own fault-based conduct and, therefore, we will reverse that portion of the Board's order.

Because we determine that Claimant was ineligible for benefits during the time at issue on the basis that he was not then "unemployed," we uphold the Board decision to deny benefits. We reverse the imposition of a fault overpayment, however, in light of the lack of any evidence of culpability on Claimant's part.

### ORDER

**NOW,** January 8, 2004, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed in part and reversed in part in accordance with the foregoing opinion.

## CONCURRING AND DISSENTING OPINION BY Judge FRIEDMAN.

I concur with that portion of the majority's opinion reversing the Unemployment Compensation Board of Review's (Board) imposition of a fault overpayment on Michael W. Kelly (Claimant) pursuant to section 804(a) of the Unemployment Compensation Law (Law).[1] However, I disagree with the majority's determination that Claimant was ineligible for unemployment compensation benefits under the Law because he was not "unemployed" as that term is statutorily defined. To the contrary, I agree with Claimant's contention that he remained "unemployed" throughout his entire benefits period and, therefore, he received no benefits to which he was not entitled.

As the majority recounts, Claimant lost his full-time sales manager position in November 2001, and the Office of Employment Security (OES) determined that he was eligible for benefits. In January 2002, Claimant began working full-time in real estate sales, with pay on a commission only basis. However, Claimant continued to file for and receive unemployment compensation benefits, concluding that he remained eligible for benefits because he had yet to make a sale or receive a commission.[2]

Subsequently, OES determined that Claimant became ineligible for unemployment compensation benefits once he assumed this full-time sales position. OES reasoned that, in accordance with sections 401 and 4(u) of the Law, 43 P.S. §§ 801 and 753(u), a claimant must be employed less than his or her full-time hours to be

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 874(a). Section 804(a) of the Law provides that when a person, by reason of his own fault, has received compensation under the Law to which he was not entitled, he shall be liable to repay the amount received, plus interest, to the Unemployment Compensation Fund. 43 P.S. § 874(a). As explained in this dissenting opinion, I would hold that Claimant remained eligible for unemployment compensation benefits throughout the period in question, and, on that basis, I would conclude that there was no overpayment to be recouped under this section of the Law. Howev-

er, even if I believed that Claimant received compensation to which he was not entitled, I would agree with the majority that the referee and the Board erred in concluding that Claimant received an overpayment through his own fault, which could be recouped under section 804(a) of the Law.

2. Claimant finally earned his first commission from his real estate sales on April 17, 2002, and he reported the resulting $471.00 in earnings to his local unemployment compensation service center. (Referee's Findings of Fact, Nos. 6–7.)

considered "unemployed" and, thus, eligible for benefits. Because Claimant was working *full-time* as of January 1, 2002, albeit on a commission only basis, OES concluded that Claimant had not been entitled to receive benefits after that date.

Claimant appealed and the referee affirmed; like the OES, the referee determined that, because Claimant was involved in real estate sales on a full-time basis, he was no longer "unemployed" within the meaning of sections 401 and 4(u) of the Law. On further appeal, the Board also affirmed.[3] The majority of this court now joins with the referee and the Board in determining that Claimant became ineligi-

---

3. In doing so, the Board further concluded that Claimant "would also be ineligible for benefits under Section 402(h) and 4(*l*)(2)[(B)] of the Law regarding self employment and independent contractors." (Board op., O.R., Item 10.) Although the majority had no need to address the issue of Claimant's self-employment, my disposition of the case would require me to consider the matter. That being the case, I would reject the Board's determination that Claimant was self-employed and, thus, rendered ineligible for benefits under sections 402(h), (ineligibility for self-employment), and 4(*l*)(2)(B) of the Law, (determination of employment based on a lack of control or direction over the work).

Initially, I observe that the Law does not specifically define the term "self-employment"; instead, the definition of the term "employment" in section 4(*l*)(2)(B) specifically excludes services performed under circumstances where it is shown that (a) the individual is free from control or direction over the performance of such services, and (b) the individual is customarily engaged in an independently established trade, occupation, profession or business. 43 P.S. § 4(*l*)(2)(B). Before a claimant may be declared ineligible for benefits due to self-employment, both elements of section 4(*l*)(2)(B) must be established either by the employer or, where the employer is not involved, by the unemployment compensation authorities. *Wolff v. Unemployment Compensation Board of Review*, 79 Pa.Cmwlth. 352, 468 A.2d 1213 (1984); *Crenshaw v. Unemployment Compensation Board of Review*, 50 Pa.Cmwlth. 136, 412 A.2d 682 (1980). That burden has not been met in this case; indeed, neither the referee nor the Board made any findings relevant to the question of self-employment.

Moreover, I disagree that a real estate salesperson, who is not also a real estate broker, can qualify as self-employed under the Law. In this regard, I am guided by the Real Estate Licensing and Registration Act (Act), Act of February 19, 1980, P.L. 15, *as amend-ed*, 63 P.S. §§ 455.101–455.902. It is apparent from relevant sections of the Act that, although he may have been an independent contractor, Claimant also was considered to be an employee of Coldwell Banker. Section 201 of the Act, 63 P.S. § 455.201 (emphasis added) (defining "Salesperson" as "Any person *employed* by a licensed real estate broker" and stating that the use of the word "employee" or "employed" in the Act applies both to "the relationship of independent contractor as well as to the relationship of employment.") Further, it is clear that Claimant was trained by Coldwell Banker as a salesperson and was subject to Coldwell Banker's ongoing supervision. Section 522(b) of the Act, 63 P.S. § 455.522(b) (requiring an applicant for a salesperson's license to submit a sworn statement from the broker with whom he desires to be affiliated certifying that the broker will *actively supervise and train* the applicant). Indeed, the Pennsylvania State Real Estate Commission has the power to revoke a broker's license where the broker has been found guilty of "failing to exercise adequate supervision over the activities of his licensed salesperson." Section 604(a)(16) of the Act, 63 P.S. § 455.604(a)(16); *Dougherty v. State Real Estate Commission*, 99 Pa. Cmwlth. 397, 513 A.2d 555 (1986), *appeal denied*, 515 Pa. 587, 527 A.2d 547 (1987). Finally, under his current license, Claimant was not free to sell real estate for any broker other than Coldwell Banker, section 603(a) of the Act, 63 P.S. § 455.603(a); in fact, he is forbidden from receiving commissions from any other source. Section 604(a)(12) of the Act, 63 P.S. § 604(a)(12); *see Eill v. Tegler*, 722 A.2d 200 (Pa.Super.1998) (holding that a real estate salesperson may not sue a third party for unpaid real estate brokerage commissions; only a licensed broker may maintain such an action). These factors all lead me to conclude that real estate salespersons, such as Claimant, are not self-employed within the meaning of the Law.

ble for unemployment compensation benefits after taking the full-time real estate sales job in January 2002. For the following reasons, I cannot agree.

### Section 4(u)

Section 401 of the Law provides that compensation shall be payable to any employee who is or becomes unemployed and who meets the qualifications required to secure compensation. 43 P.S. § 801. Section 4(u) of the Law provides two independent definitions of the term "unemployed" as follows.

> An individual shall be deemed unemployed *(I)* with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him *and* (ii) with respect to which no remuneration is paid or payable to him, *or (II)* with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

43 P.S. § 753(u) (emphasis added). There is no question that, because he works full-time, Claimant does not satisfy the second definition. As to the first definition, the majority concedes that, with the exception of one week in April of 2002, Claimant received no remuneration during the period in question. Nevertheless, because Claimant worked on a commission basis, performing services for which remuneration *could* eventually *be payable* to him, the majority concludes that Claimant was not "unemployed" as that term is statutorily defined.[4]

In support of its position, the majority relies on *Myers v. Unemployment Compensation Board of Review*, 101 Pa. Cmwlth. 149, 515 A.2d 1013 (1986), *Jeter v. Unemployment Compensation Board of Review*, 78 Pa.Cmwlth. 279, 467 A.2d 418 (1983), and *Unemployment Compensation Board of Review v. Miedama*, 27 Pa. Cmwlth. 207, 365 A.2d 900 (1976). At first blush, these cases do appear to control. Ultimately, however, I conclude that these

---

4. In this regard, the majority adopts the Board's, rather than the referee's, reasoning. In his opinion, the referee determined that Claimant's lack of remuneration was immaterial and concluded that Claimant could not be considered "unemployed" under section 4(u) because he was involved in real estate sales on a *full-time* basis. However, a reading of the referee's analysis of the issue reveals the flaw in this reasoning. The referee states:

> Section 401 provides that compensation shall be payable to any employee who is or becomes unemployed. Section 4(u) provides that an individual shall be deemed unemployed *(I)* with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him *and* (ii) with respect to any week of less than full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit .... *as the claimant was working on a full-time basis, he is ineligible for benefits under Sections 401,4(u) ... of the law.*

(Referee's op., O.R., Item 8) (emphases added). It is apparent that the referee misinterpreted section 4(u) as requiring a claimant to satisfy both definitions of "unemployed" before he or she would qualify for benefits and, therefore, Claimant's full-time work necessarily would make him ineligible for benefits under section 4(u). Of course, the fact that Claimant works full-time trying to sell real estate raises the issue of Claimant's possible ineligibility for unemployment compensation benefits under section 401(d) of the Law, 43 P.S. § 801(d), which requires that a claimant be available for suitable work. However, I note that this issue has not been raised. Moreover, there is nothing in the record to indicate that Claimant would refuse to accept an offer of suitable employment, particularly given his lack of success in the field of real estate. In fact, until successfully rebutted, a claimant is entitled to the presumption of availability once he or she registers for work with OES. *Pennsylvania Electric Co. v. Unemployment Compensation Board of Review*, 73 Pa.Cmwlth. 258, 458 A.2d 626 (1983).

cases are not dispositive under the circumstances presented here.

As the majority correctly notes, in both *Myers* and *Jeter*, we state that the expectation of possible future benefits can constitute remuneration as intended by section 4(u). However, both *Myers* and *Jeter* cite *Miedama* for that principle. Simply put, *Miedama* never uses this language and cannot be read as standing for this proposition.

*Miedama* stands only for the proposition that "remuneration" as intended in section 4(u) of the Law need not be so strictly construed that it applies only to "financial" remuneration. In that case, when the claimant lost her job with one travel agency, she agreed to "volunteer" her services at another travel agency in exchange for the use of their facilities. Access to these facilities enabled her to continue to participate in her profession and retain her clients. We concluded that, although the claimant was not "paid" for her services at the new agency, she received remuneration in a different form, removing her from the definition of "unemployed" in section 4(u). Thus, *Miedama* did not concern possible future benefits of financial remuneration; rather, it dealt with current remuneration that was not monetary.

Moreover, both *Myers* and *Jeter* are significantly distinguishable from the present matter. In *Myers,* after the claimant lost her job, she began volunteering administrative services to a different employer, who made it clear to the claimant that she would not be paid for her work as an administrator unless and until the employer brought in some money through sales. Nevertheless, when the claimant submitted an invoice for her "volunteer" services, *the employer paid.* Thus, *there was no question that the claimant received financial remuneration* for these services; the issue

in *Myers* was whether, *in light of this subsequent remuneration,* the claimant should be subject to a fault overpayment for collecting benefits during her period of "volunteer" work. Because the claimant had been told specifically that she would not be paid for those services, we concluded that she filed valid applications during the period involved and, thus, should not be assessed fault overpayments.

In *Jeter,* the claimant was laid off when the public contract under which she was paid was not renewed. The claimant then began performing her job voluntarily, having been promised that she would be paid for these services if the contract were renewed. When the contract subsequently was renewed, *the claimant received a "bonus" equal to the salary she would have received* if there had been no interruption in the contract. The court in *Jeter* held that under circumstances where the claimant "performs services upon the expectation of receiving a possible future benefit, *and then receives that hoped for benefit,"* the claimant was not unemployed during the period of "volunteer" work under section 4(u). *Jeter,* 467 A.2d at 420 (emphasis added). Because the claimant in *Jeter* received remuneration attributable to services performed, as promised, that case does not control the question of a claimant's eligibility for benefits where, as here, the claimant's hopes are not ultimately realized.

I do not read any of the above cited cases as necessarily defeating the argument made by Claimant here that he received no unemployment compensation benefits to which he was not entitled, where the record establishes that, although Claimant worked as a real estate salesperson with the hope that he would receive remuneration for his efforts, his hopes were not realized. In that sense, this appears to be a case of first impression. Significantly, my research has un-

covered no case in which the court equates unrealized hopes for payment with remuneration paid or payable.

In addition, the cases of *Marr v. Unemployment Compensation Board of Review*, 12 Pa.Cmwlth. 82, 314 A.2d 596 (1974), and *Laswick v. Unemployment Compensation Board of Review*, 10 Pa.Cmwlth. 356, 310 A.2d 705 (1973), would seem to support Claimant's argument. In *Marr*, the claimant was laid off from her work as a receptionist and, while receiving unemployment compensation benefits, began work as a jewelry demonstrator, with pay only through commissions on sales. In *Laswick*, the claimant lost his job as a development engineer and, while receiving compensation, attempted to sell promotional material to banks on a commission basis. Although they dealt with the issue of self-employment, in each of these cases, we recognized the principle that an eligible claimant may continue to receive benefits during periods of employment by others, with his employment benefits reduced on account of *remuneration received* from the employer. We did not include remuneration that the claimants had hoped to receive from sales never made. In fact, in *Marr*, after concluding that the Board erred in denying benefits based on self-employment, we noted that the Board also may have erred in determining that the claimant was not "unemployed" under section 4(u). We stated that it was possible that, although employed, the claimant may have received no remuneration for his activities and may have had no expectation of receiving any remuneration for those activities in the future, due to a lack of sales.

In this case, although Claimant expended considerable time and energy in an effort to make sales, the record is clear that he was unsuccessful in these attempts. Therefore, I would disagree with the majority that there was any remuneration *payable*, or any remuneration that *could be*

*payable*, to Claimant for the weeks at issue. As the majority states, a commission is a fee earned by an agent *for transacting an item of business;* the amount normally is *a percentage of the money received* by the agent for conducting the business. (Majority op. at 472, citing Merriam–Webster Collegiate Dictionary 230 (10th ed.2001)) (emphasis added). Where, as here, a commissioned salesperson makes no sales, i.e., he transacts no business, he is not entitled to receive any commission, and there can be no remuneration payable to that individual. Accordingly, I would conclude that Claimant satisfies the first definition of "unemployed" set forth in section 4(u)($I$) of the Law, where he performed no services for which remuneration was paid *or payable* during the period in question, and, in fact, there was no remuneration paid *or payable* to Claimant during this time.

#### Section 4($l$)(4)(17)

Moreover, even if the Board is correct, and Claimant was "employed" within the meaning of section 4(u) of the Law, I believe he would remain entitled to benefits under the exception in section 4($l$)(4)(17) of the Law, 43 P.S. § 753($l$)(4)(17). This section provides, in pertinent part:

> The word *"employment" shall not include—*
>
> —*Service performed by an individual for an employer as an* insurance agent or *real estate salesman* or as an insurance solicitor or as a real estate broker or as a solicitor of applications for, or salesman of, shares of or certificates issued by an investment company, or as an agent of an investment company, *if all such service performed by such individual for such employer is performed for remuneration solely by way of commission,* or services performed by an individual as an unsalaried correspondent for a newspaper, who receives no

compensation, or compensation only for copy accepted for publication.

43 P.S. § 753(*l*)(4)(17) (emphasis added).

Here, the undisputed facts establish that Claimant was a real estate salesperson working solely on commission; as such, he remained eligible for unemployment compensation benefits pursuant to section 4(*l*)(4)(17) of the Law.[5] *Shoemaker v. Unemployment Compensation Board of Review*, 138 Pa.Cmwlth. 403, 588 A.2d 100 (1991).[6] Thus, I would conclude that the Board erred in denying benefits to Claimant based on his employment as a commission only real estate salesperson.

Accordingly, for these reasons, I would reverse the order of the Board.

5. The Board does not refute Claimant's argument concerning the applicability of section 4(*l*)(4)(17) to the present matter. Rather, the Board maintains that, because Claimant failed to raise a section 4(*l*)(4)(17) argument prior to his appeal to this court, he has waived the issue and, therefore, we should not consider it. Alternatively, the Board asserts that, if Claimant did not waive the issue, we must remand so that the Board has the opportunity to rule on the matter. I disagree with both of the Board's contentions.

Here, OES framed the issue of Claimant's ineligibility for unemployment compensation benefits in its most general terms, maintaining that Claimant was no longer "unemployed" within the meaning of the Law. At every stage of the proceedings, Claimant argued that he remained unemployed and, thus, eligible for benefits. Subsumed within this argument is the possible application of section 4(*l*)(4)(17). Moreover, at the hearing before the referee, Claimant presented facts sufficient to establish his continuing entitlement to benefits as a matter of law; the fact that the referee and the Board failed to consider all relevant aspects of that question is of no moment. Further, contrary to the Board's claim, no remand is necessary here. The referee's findings, adopted by the Board, establish that Claimant was involved in real estate sales and was paid solely by commission. If, as in this case, we are able to apply the law to the facts already determined, we will do so rather than remand. *Shoemaker v. Unemployment Compensation Board of Review*, 138 Pa.Cmwlth. 403, 588 A.2d 100 (1991).

6. As to the applicability of section 4(*l*)(4)(17) of the Law in the present case, I recognize that this section generally is applied to issues dealing with a claimant's financial eligibility for benefits. *See e.g., American General Life and Accident Insurance Company v. Unemployment Compensation Board of Review*, 166 Pa.Cmwlth. 360, 648 A.2d 1245 (1994), *appeal denied*, 544 Pa. 636, 675 A.2d 1252 (1996); *Cameron v. Unemployment Compensation Board of Review*, 68 Pa.Cmwlth. 407, 449 A.2d 123 (1982). However, it seems logical that, if an individual is not considered eligible for benefits when he loses a job as a real estate salesperson working solely on commission (because this work is not considered to be "employment"), an otherwise eligible individual should not forfeit benefits when he attempts to sell real estate on a commission only basis. *Shoemaker* applies section 4(*l*)(4)(17) in precisely this manner.