IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Correctional Care, Inc.,           :
                                            : No. 2594 C.D. 2015
                 Petitioner     : Submitted: June 17, 2016
                                            :
             v.                   :
                                            :
Unemployment Compensation    :
Board of Review,                 :
                                            :
                 Respondent    :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED: July 29, 2016

Correctional Care, Inc. (Employer) petitions for review of the November 20, 2015 order of the Unemployment Compensation Board (Board), which affirmed a referee's decision and held that Melissa A. Cravath (Claimant) was not ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937), 2897, *as amended*, 43 P.S. §802(e). Section 402(e) provides than an employee shall be ineligible for compensation for any week in which her unemployment is due to her discharge or temporary suspension from work for willful misconduct connected with her work.

While the Law does not define the term willful misconduct, our courts have defined it as including: wanton or willful disregard for an employer's interests; deliberate violation of an employer's rules; disregard for standards of behavior which an employer can rightfully expect of an employee; or negligence indicating an intentional disregard of the

**(Footnote continued on next page…)**

Employer discharged Claimant on May 20, 2015. The local service center granted her application for benefits, and Employer appealed. Following a hearing, the referee affirmed the local service center's determination. Employer then appealed to the Board, arguing that Claimant had been discharged for disqualifying willful misconduct. The Board resolved the conflicting evidence in Claimant's favor, affirmed the referee's decision, and held that Claimant was not ineligible for benefits under Section 402(e) of the Law.

The facts as found by the Board are as follows.

1. [Claimant] was last employed as a full-time bookkeeper by [Employer] from March 17, 2014, at a final rate of $17.00 per hour and her last day of work was May 20, 2015.

2. [Employer] provides medical services to inmates at correctional institutions.

3. [Employer] provides medical services to inmates at the [Lackawanna County Prison] and the president, Dr. Zaloga, had an office at that location.

4. [Claimant] worked at another location at Birney Avenue in Moosic, PA, where medical records were kept for the inmates.

5. Dr. Zaloga did not have a private medical facility where he saw patients.

6. On December 15, 2014, [Employer] received a $2,500 penalty for untimely tax filings for 2014.

---

**(continued…)**

employer's interest or an employee's duties or obligations. *Navickas v. Unemployment Compensation Board of Review*, 787 A.2d 284, 288 (Pa. 2001).

7. [Claimant] was responsible for processing of payroll and making [Employer's] tax filings biweekly.

8. As a result of the untimely tax filings, on December 17, 2014, Dr. Zaloga informed [Claimant] via an email that "YOU are not to send NOTHING [sic] out of this office without [the chief operating officer's/COO's] PRIOR written approval. Failure to adhere to this direction will result in your immediate termination for cause."

9. In March of 2015, [Employer] began providing medical services to inmates at the Susquehanna County Prison, in addition to the Lackawanna County Prison.

10. Services for the two prisons were provided under two separate contracts, which raised issues for [Employer] in regard to how overtime for employees working at both locations should be allocated.

11. In May of 2015, [Claimant] came under the supervision of a new COO.

12. In May of 2015, [Claimant] and the COO met with [Employer's] accountant and discussed how overtime should be allocated. The COO advised [Claimant] that she should not pay any overtime until he was able to discuss the issue in the near future with Dr. Zaloga and there was a consensus reached between the COO, the accountant, the attorney and Dr. Zaloga.

13. The doctor ultimately directed [Claimant] to pay employees straight time for any hours worked over 40 for pay period ending May 6, 2015.

14. On May 15, 2015, [Claimant] received a medical record for a patient via fax at [Employer's] Birney Avenue location.

15. [Claimant] assumed the medical record was for an inmate at the Lackawanna County Prison because it had the address for the Lackawanna County Prison on it.

16. The medical record was for a private patient of Dr. Zaloga; however, [Claimant] was not aware that Dr. Zaloga had private patients.

17. On May 16, 2015, Dr. Zaloga became aware that [Claimant] faxed a medical record for his private patient to the prison.

18. On May 18, 2015, [Claimant] sent an email to [Employer's] accountant stating "I'm sending this email to confirm the conversation we had on your last visit to the office. I had asked you what to do in a situation where an employee of CCI works at both Lackawanna County Prison & Susquehanna County Correctional Facility, and their combined hours for both facilities totals greater than 40 hours per week. Do we have to pay overtime for the hours over 40 even though they worked at 2 different locations which are 2 different CCI contracts? You stated that the employee will be issued 1 single W-2 for all wages paid to them from CCI, regardless of the location. Therefore yes, we must pay overtime wages even though they are 2 different locations. So to confirm—as per your instruction I am to pay them overtime wages owed from last pay period & any further hours worked over 40 hours per week, regardless of location, should be paid overtime. Yes/No????"

19. On May 18, 2015, [Employer's] accountant responded to [Claimant] via email and stated "I believe this is correct but we are getting into labor laws which should be run by attorney for his review."

20. Later on May 18, 2015, [Claimant] sent an email to [Employer's] attorney stating, "We've had a situation come up where 2 nurses had worked at both Lackawanna County Prison & Susquehanna County Correctional Facility during the same pay week. Their combined total hours worked per week are greater than 40…Initially, when I asked Doc he told me no overtime was required because it is 2 separate contracts, 2 separate jobs. But this still concerned me because even though the nurses were working at 2 separate locations and being paid on

4

separate checks … they are still working for CCI—1 company, 1 EIN, and will receive 1 W-2 from CCI for ALL wages paid regardless of location. As you can read below, I ran this idea past [the accountant] and he agreed, but is not certain. So I seek your wisdom … Legally, where do we stand? What does Dept. of Labor have to say about our situation? Do we pay time & half for hours over the combined 40? Please tell me how to proceed."

21. [Claimant] sent a copy of her May 18, 2015 email to the accountant to the COO.

22. On May 19, 2015, [Employer's] attorney responded to [Claimant] via email and stated "Overtime is to be paid."

23. On May 19, 2015, [Claimant] sent an email to Dr. Zaloga and copied the COO. The email stated "As per [the attorney's] research, it looks like the law says that we owe… some overtime for last pay period … and again this pay period. It's not a big deal, I can easily make the adjustments & include them in this payroll for your review later. I just don't know who to charge the OT too? LCP or SCCF?"

24. On May 19, 2015, Dr. Zaloga responded to [Claimant] via email and copied the COO, the attorney, and the accountant. Dr. Zaloga stated "When you brought this up 2 weeks ago I told you that I would speak to [the attorney] &/or [the accountant]. No one ever told you to start questioning them." Dr. Zaloga reminded [Claimant] of his December 17, 2014 directive and told [Claimant] "Instead of worrying about issues that concern [the COO] and [me], you need to worry about following my directives to you. Last Friday, without permission from anyone, you violated the HIPAA[2] rights of a private patient of mine by faxing his test results to the Lackawanna County Prison. Neither [the COO] nor I directed you to do this. Apparently, you

---

[2] The Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29 and 42 U.S.C.).

5

chose to ignore my directive of 12-17-14. If this happens again you will be immediately terminated for cause."

25. The doctor specifically told [Claimant] at the end of the May 19, 2015 email "I will discuss this issue with [the accountant] &/or [the attorney] and decide what I wish to do. Therefore, please proceed as I instructed you to last pay."

26. [Employer] was still in the process of determining who to allocate the overtime to properly.

27. On May 20, 2015, [Claimant] did not complete payroll for two employees who worked in excess of 40 hours. [Claimant] left payroll for the two employees in question blank for the doctor to complete on his own.

28. On May 20, 2015, [Employer] discharged [Claimant] for sending emails to the accountant and attorney in regard to the payment of overtime and sending a patient's medical information to a wrong location, without the permission of the COO, in violation of the doctor's December 17, 2014 directive.

Findings of Fact, Nos. 1-28. The Board concluded that because Employer had already warned Claimant about the two incidents that resulted in her discharge, Employer failed to meet its burden of proving that Claimant was discharged for willful misconduct.

On appeal to this Court,[3] Employer asserts that the Board's Findings of Fact Nos. 15, 16, and 28 are not supported by substantial evidence of record and its decision is contrary to applicable law. Employer argues that the Board erred in

_____

[3] Our scope of review is limited to determining whether constitutional rights have been violated, whether errors of law were committed, or whether findings of fact are supported by substantial evidence. *Procyson v. Unemployment Compensation Board of Review*, 4 A.3d 1124, 1127 n.4 (Pa. Cmwlth. 2010).

accepting Claimant's testimony and in failing to consider Employer's assertions that Claimant was discharged for repeated violations of Employer's directive and for violating HIPAA regulations.

An employer contesting a claimant's right to benefits under Section 402(e) bears the burden of proving willful misconduct. *Walsh v. Unemployment Compensation Board of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). If the employer satisfies its initial burden, the burden shifts to the claimant to demonstrate good cause for her actions. *Lausch v. Unemployment Compensation Board of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). The determination of whether a claimant's actions amount to willful misconduct is a question of law subject to appellate review. *Noland v. Unemployment Compensation Board of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981). The issue in willful misconduct cases is not whether the employer had the right to discharge the employee for the particular conduct, but, rather, whether the Commonwealth is justified in reinforcing that decision by denying benefits under the Law. *See, e.g., Frumento v. Unemployment Compensation Board of Review,* 351 A.2d 631, 634 (Pa. 1976); *Pennsylvania State Police v. Unemployment Compensation Board of Review,* 578 A.2d 1360, 1361 (Pa. Cmwlth. 1990).

In unemployment compensation proceedings, the Board is the ultimate fact-finder, empowered to determine the credibility of witnesses and resolve conflicts in evidence; the Board's findings are conclusive on appeal where they are supported by substantial evidence.[4] *Curran v. Unemployment*

---

[4] "Substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *American General Life and Accident Insurance Company v. Unemployment Compensation Board of Review,* 648 A.2d 1245, 1248 (Pa. Cmwlth. 1994).

7

*Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000).  We must view the record in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can reasonably be drawn from the evidence. *Sanders v. Unemployment Compensation Board of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

Employer's argument relies on its preferred version of the facts, rather than those found by the Board.  Essentially, then, Employer's contentions on appeal are challenges to the Board's exclusive authority over matters of witness credibility and evidentiary weight.  In this case, the Board resolved conflicts in testimony in Claimant's favor, and the testimony accepted by the Board constitutes substantial evidence supporting the Board's findings.  Those findings, in turn, support the Board's conclusion that Employer failed to meet its burden of proving that Claimant engaged in willful misconduct that would disqualify Claimant from receiving unemployment compensation.  Employer cites no authority to support its vague assertions to the contrary.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Correctional Care, Inc., : 
: No. 2594 C.D. 2015
Petitioner :
:
v. :
:
Unemployment Compensation :
Board of Review, :
:
Respondent :

O R D E R

AND NOW, this 29th day of July, 2016, the order of the
Unemployment Compensation Board of Review, dated November 20, 2015, is
affirmed.

_____
MICHAEL H. WOJCIK, Judge