# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James J. Kurylo,                 :
               Petitioner      :
                                :
           v.               :    No. 2296 C.D. 2015
                                :    Submitted: April 15, 2016
Unemployment Compensation     :
Board of Review,               :
               Respondent    :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**          **FILED: June 15, 2016**

James Kurylo (Claimant) petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) reversing a UC Referee's (Referee) Decision finding Claimant not ineligible for UC benefits pursuant to Section 402(e) of the UC Law (Law).[1] On appeal, Claimant argues that: (1) the Board erred, as a matter of law, by finding that his conduct constituted willful misconduct for reasons different than the reasons given by his employer,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e). Section 402(e) provides that an employee is ineligible for UC benefits if "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." Id.

Parkhouse Nursing and Rehabilitation Center (Employer), as to why it discharged Claimant; (2) he attempted to comply with Employer's sick time policy; and (3) even if Claimant did not comply with Employer's sick time policy, he had good cause for not doing so. Because the Board's conclusion that Claimant engaged in willful misconduct for failing to provide Family and Medical Leave Act (FMLA)[2] paperwork is not supported by substantial evidence, we reverse.

Claimant was employed by Employer as a driver from August 25, 2014 until March 11, 2015, when he got sick and did not report to work. (Referee Decision, Findings of Fact (FOF) ¶¶ 1-3.) The events that took place subsequent to March 11, 2015 are the subject of the instant dispute.

Claimant applied for UC benefits on April 17, 2014, stating that he was fired. (Claimant Questionnaire, C.R. at 2.) Claimant stated that he "was out sick for a week" and that "[t]he policy book says if you are out for more than 3 or 5 days you must have a doctor[']s note. . . . I called for my schedule and was told not to come back and to call H.R." (Employment Separation Questionnaire, C.R. at 2.) Claimant provided a doctor's note, which stated that he was under the care of a physician from March 12, 2015 through March 23, 2015, and that Claimant could return to work on March 24, 2015. (Id.) In addition, Claimant attached a letter from Employer dated April 13, 2015, which states that pursuant to Employer's Request for Leave guidelines, "[Employer] requires that a Medical Certification be returned within 15 days of your request, or your employment will be terminated due to job abandonment. At this time, we have not received your Medical Certification." (Employer Letter, C.R. at 2.) The letter also stated that "your Leave of Absence paperwork is required to be returned no later than April 27,

---

[2] 29 U.S.C. §§ 2601-2654.

2

2015. If the proper paperwork is not returned, the leave will not be approved, and your employment will be terminated due to job abandonment." (Id.)

On the request for separation and wage information, Employer stated that Claimant is still employed, he is out sick, and he needed to apply for FMLA leave. (Employer's Notice of Application, C.R. at 3.) Employer did not respond to Claimant's claim for UC benefits. (Employer Questionnaire (Incomplete), C.R. at 3.)

The UC Service Center issued a Notice of Determination on May 14, 2015, finding that Claimant was not ineligible for benefits pursuant to Section 402(e) of the Law. (Notice of Determination, C.R. at 4.) The UC Service Center determined that Employer did "not show[] that the Claimant's actions showed a willful disregard of the Employer's interests or that the Claimant's actions showed a disregard of the standards of behavior the Employer has the right to expect" or that "Claimant's actions constituted negligence." (Id.) Accordingly, the UC Service Center determined that Employer did not sustain its burden of proof under Section 402(e) of the Law.

Employer appealed the Notice of Determination. In its petition, Employer explained that Claimant was not discharged and that he was still employed. Employer stated that Claimant could return to work if he provided a doctor's note, per Employer's policy. Employer asserted that Claimant did not yet provide the doctor's note, and that "Claimant is on medical leave." (Petition for Appeal, C.R. at 5.) A hearing on Employer's appeal was held before the Referee on June 17, 2015.[3] Claimant appeared, with counsel, and testified. Employer appeared with one witness, its Human Resources Director (HR Director).

---

[3] The hearing was continued from June 5, 2015.

HR Director testified with regard to the April 13, 2015 letter, notifying Claimant that if he did not complete the required leave paperwork,[4] he would be terminated. (Hr'g Tr. at 4.) HR Director stated that Claimant never provided a doctor's note to her office. (Hr'g Tr. at 5.) She further stated that "all we needed was a doctor's note for him to return." (Hr'g Tr. at 5.) HR Director testified that employees who call out of work are required to notify their direct supervisor, and that "[a]fter three days, per our policy, we do require a doctor's note to return." (Hr'g Tr. at 6.) All the note must indicate is that the employee is able to return to work. (Hr'g Tr. at 6.)

Claimant testified that he tried to give both his supervisor and HR Director his doctor's note, but "[n]o one would take it. They said they don't want it." (Hr'g Tr. at 8.) Claimant testified further that "I called them for my schedule. I said [supervisor], I'm better now. I have my doctor's note as the policy says. He says I don't want your doctor's note and it's out of my hands." (Hr'g Tr. at 8.) Claimant's supervisor then told him he would have to go to HR. (Hr'g Tr. at 9.) Claimant testified that when he called HR about his doctor's note and asked to come back to work, HR Director stated that "you will not come back to work. I do not want the note." (Hr'g Tr. at 9.) After that, Claimant testified that he never heard from anyone and that no one from Employer returned his calls. (Hr'g Tr. at 10.) Claimant concluded his testimony by stating that he was familiar with Employer's sick leave policy and that he had a copy of the policy. (Hr'g Tr. at 10.)

---

[4] The leave HR Director described is the 12-week, FMLA leave. See 29 U.S.C. § 2612(a)(1) (providing that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period").

Based on the evidence presented, the Referee made the following findings of fact:

1. The claimant was employed by Parkhouse Nursing from 8/25/14 until 3/11/15.

2. The claimant was employed full-time as a Driver at a pay rate of $15 per hour.

3. The claimant was sick after 3/11/15, and advised the employer that he needed to be out of work temporarily.

4. The claimant advised the employer that he was seeing his doctor.

5. The claimant did see his doctor on 3/12/15, and obtained a doctor's note excusing him from work for the timeframe of 3/12/15 through 3/23/15, with a return to work date of 3/24/15.

6. The claimant advised his supervisor and offered to provide the doctors note, but the supervisor told the claimant that he needed to speak to the HR department at that point.

7. The claimant did speak to the HR department, and was told the HR department did not want his doctor's note, but instead wanted the claimant to fill out family [and] medical leave act paperwork.

8. The claimant advised the HR department that there was no need for such paperwork, since he already had a doctor's note, and since he did not intend to take leave under the family [and] medical leave act.

9. As of the date of the appeal hearing in this case, the employer has refused to take the claimant back to work, despite the doctor's note.

(Referee Decision, Findings of Fact (FOF) ¶¶ 1-9.) The Referee concluded that, based upon the foregoing findings, "[C]laimant was not guilty of misconduct . . . , let alone willful misconduct upon which benefits can be disapproved." (Referee Decision at 2.) Accordingly, the Referee affirmed the UC Service Center's

5

determination and found that Claimant was not ineligible for benefits under Section 402(e) of the Law. (Referee Decision at 2.)

Employer appealed the Referee's Decision to the Board. In its appeal, Employer argued that Claimant was not terminated and that he "was on a medical leave of absence." (C.R. at 10.) Further, Employer asserted that "[Claimant] never presented the [d]octor['s] note he had in his possession to [Employer]. If the doctor's note had been received, [Claimant] would have been brought back to work on 3/24/15." (Id.) Employer maintained that "[Claimant] refused to follow [Employer's] policy and did not present the doctor['s] note, therefore he restricted himself from returning to work[,]" but, given that HR Director saw the doctor's note at the hearing, Claimant was still able to return to work. (Id.)

In reversing the Referee's Decision, the Board made the following findings of fact:

1. The claimant was last employed as a full-time driver by Parkhouse Nursing and Rehabilitation Center from August 25, 2014, at a final rate of $15.00 per hour and his last day of work was March 11, 2015.

2. After March 11, 2015, the claimant was off work due to stomach problems and was advised by his doctor that he could not return to work until March 24, 2015.

3. The claimant advised the employer of his health condition and the employer gave the claimant documentation to request a leave of absence under the Family and Medical Leave Act (FMLA).

4. **Several days prior to March 24, 2015, the claimant contacted his supervisor and advised that he had a doctor's note releasing him to return to work on March 24, 2015.**

6

5. **The supervisor told the claimant that he could not accept the doctor's note** and the claimant had to speak to human resources regarding the matter.

6. The claimant contacted the human resources director and advised that he had a doctor's note releasing him for work on March 24, 2015.

7. The human resources director told the claimant that he needed to complete and submit the FMLA documentation.

8. The claimant did not submit the FMLA documentation as requested.

9. On April 13, 2015, the employer sent the claimant a letter advising that he had until April 27, 2015, to submit completed FMLA documentation or he would be discharged for job abandonment.

10. The claimant did not submit the requested FMLA documentation by April 27, 2015 and was discharged.

(Board Decision, FOF ¶¶ 1-10.) (emphasis added). In addition, the Board set forth the following reasoning for its Order:

The claimant was off work from March 12, 2015 through March 23, 2015 due to stomach problems. The employer gave the claimant FMLA documentation to complete to request a leave of absence for his health condition. **The claimant attempted to return to work with a doctor's note** and was informed that he had to submit completed FMLA documentation. The employer gave the claimant a deadline of April 27, 2015 for submitting the documentation. The claimant was discharged for not submitting the FMLA documentation by April 27, 2015 as requested.

The claimant testified that he believed that he would not qualify for FMLA because he had not been employed for a year. The claimant has not credibly established good cause for disobeying the employer's directive to submit FMLA documentation to excuse his absence. The claimant's discharge was attributable to willful misconduct. Benefits are denied to the claimant under Section 402(e) of the Law.

7

(Board Decision at 3.) (emphasis added). Claimant filed a request for reconsideration, which the Board denied. Claimant now petitions this Court for review of the Board's Order.[5]

In support of his appeal, Claimant argues that the Board erred in finding that he was discharged for engaging in willful misconduct by disobeying Employer's directive to complete FMLA documentation to excuse his absence. Rather, Claimant argues, "Employer's only rule was that a doctor's note be provided." (Claimant's Br. at 9.) Claimant contends that he attempted to submit his doctor's note, but Employer would not accept it. Thus, Claimant argues, he did not engage in willful misconduct. The Board, on the other hand, argues that Claimant did not follow Employer's directive to submit FMLA paperwork in violation of Employer's FMLA policy. (Board Br. at 6.)

Section 402(e) of the UC Law provides, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e). While the Law does not define "willful misconduct," our Court has defined it as:

> (1) a wanton or willful disregard for an employer's interests; (2) a deliberate violation of an employer's rules; (3) a disregard for standards of behavior which an employer can rightfully expect of an

---

[5] This Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact were supported by substantial evidence. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth.), petition for allowance of appeal denied, 97 A.3d 746 (Pa. 2014). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a conclusion." American Gen. Life and Accident Ins. Co. v. Unemployment Comp. Bd. of Review, 648 A.2d 1245, 1248 (Pa. Cmwlth. 1994).

employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

Phila. Parking Auth. v. Unemployment Comp. Bd. of Review, 1 A.3d 965, 968 (Pa. Cmwlth. 2010). It is well settled that:

> Employer has the burden of proving Claimant's willful misconduct. Where the willful misconduct is based upon a violation of Employer's rule or policy, this Court must determine whether this violation constitutes willful misconduct by determining whether the rule or policy is reasonable in light of all the circumstances and if so, whether the employee has good cause to violate the rule or policy.

Spirnak v. Unemployment Comp. Bd. of Review, 557 A.2d 451, 453 (Pa. Cmwlth. 1989) (citation omitted). A claimant must also be "made aware of the existence of the work rule." Bruce v. Unemployment Comp. Bd. of Review, 2 A.3d 667, 671 (Pa. Cmwlth. 2010).

We begin by recognizing the unusual character of this case, and the parties' confusion that resulted therefrom. Claimant argues that he did not commit willful misconduct because he attempted to comply with Employer's policy, which required him to submit a doctor's note before returning to work, but Employer would not accept the note. Employer's actions, thus, led Claimant to believe he had been discharged. The Board, on the other hand, argues that Claimant was discharged because of his failure to comply with Employer's directive to submit the requested FMLA paperwork, and further that Claimant did not establish good cause for his actions.

However, based on the record, we conclude that the Board's findings of fact do not support its legal conclusion that Claimant was discharged for willful misconduct because he did not complete the requested FMLA paperwork by Employer's deadline or establish good cause for his actions. The Board's

9

arguments with regard to the FMLA paperwork as the reason for Claimant's discharge, while interesting, were not the reasons that the HR Director gave on behalf of Employer during her testimony or that Employer asserted in Employer's appeals to the Referee or to the Board as to why Claimant was no longer working for Employer. Rather, Employer asserted that Claimant was not working because he did not provide a doctor's note.

The undisputed and credited evidence presented at the Referee's hearing established that Claimant could return to work if he presented a doctor's note. The Board specifically credited *Claimant's* testimony[6] that he advised Employer of his health condition, informed his supervisor that he had a doctor's note releasing him to work on March 24, 2015, and, when supervisor declined to accept the note, Claimant attempted to give the note to HR Director, who also declined to accept the note. (FOF ¶¶ 3-6.) HR Director testified that employees who call out of work are required to notify their direct supervisor, and that "[a]fter three days, per our policy, we do require a doctor's note to return[]" indicating that employee is capable of returning to work. (Hr'g Tr. at 6; see also Employee Policy Handbook, Claimant's Br., App. at A-3.) HR Director also testified at the Referee hearing that if Claimant provided the doctor's note to her, he could come back to work. Further, in its appeal to the Board, Employer did not mention the completion of FMLA paperwork, but stated only that "[Claimant] refused to follow [Employer's]

---

[6] "The Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight." Walsh v. Unemployment Comp. Bd. of Review, 943 A.2d 363, 368 (Pa. Cmwlth. 2008) (citation omitted).

policy and did not present the doctor[']s note, therefore he restricted himself from returning to work." (C.R. at 10.)[7]

It is evident that the policy at issue in this case is Employer's sick leave policy, not its FMLA policy. Therefore, the Board's conclusion that Claimant engaged in willful misconduct for failing to provide the FMLA paperwork is not supported by substantial evidence of record. Claimant credibly testified that he attempted to comply with the sick leave policy, but was turned away by Employer. As such, Claimant did not intentionally or deliberately violate Employer's sick leave policy, and the Board erred as a matter of law in finding Claimant ineligible for benefits under Section 402(e) of the Law.[8]

For the foregoing reasons, the Board's Order is reversed.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[7] Despite Employer's repeated assertion throughout the record that Claimant was not terminated and could return to work, both the Referee and the Board found that Claimant had been discharged. We will not disturb this finding of fact on appeal.

[8] Because we conclude that Claimant's actions did not rise to the level of willful misconduct, we need not address Claimant's argument that he had good cause for his actions.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James J. Kurylo, :
                    Petitioner :
                              :
          v.                  : No. 2296 C.D. 2015
                              :
Unemployment Compensation     :
Board of Review,              :
                    Respondent :

# **O R D E R**

**NOW**, June 15, 2016, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **REVERSED**.

_____
**RENÉE COHN JUBELIRER,** Judge