# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael J. Baker,                               :
                    Petitioner                  :
                                                :
          v.                                    :    No. 678 C.D. 2017
                                                :    Submitted: October 27, 2017
Unemployment Compensation                       :
Board of Review,                                :
                    Respondent                  :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                         FILED: December 20, 2017


          Michael J. Baker (Claimant), pro se, petitions for review of the Order of the

Unemployment Compensation (UC) Board of Review (Board) affirming a UC

Referee's (Referee) Decision finding Claimant ineligible for UC benefits pursuant

to Section 402(e) of the UC Law (Law)[1] because he engaged in willful misconduct

related to his work. The Board also denied Claimant's request for a remand to

supplement the record with additional evidence because Claimant failed to "assert

such evidence and witnesses were unavailable at the time of the hearing." (Bd.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§ 802(e). Section 402(e) provides that an employee is ineligible for UC benefits if "his
unemployment is due to his discharge or temporary suspension from work for willful misconduct
connected with his work." *Id.*

Order.)  On appeal, Claimant argues that:  (1) the Board erred in denying his request for a remand to supplement the record with additional evidence and witnesses; (2) the Board's findings are not supported by substantial evidence; (3) the Board erred in concluding that his actions constituted willful misconduct because Claimant did not intentionally or willfully disregard Ryder Integrated Logistics Incorporated's (Employer) safety policies; and (4) he had good cause for his actions.[2]  Discerning no error, we affirm.

Claimant worked for Employer from April 25, 1989, until his discharge on December 16, 2016; however, his last day of work before his discharge was December 14, 2016.  At the time of his discharge, Claimant was a warehouse operator, the duties of which include performing maintenance within the warehouse, which occasionally required that Claimant drive a cart-type vehicle through the warehouse and move safety cones out of the travel path of automated guided vehicles (AGVs).  Claimant filed an internet claim for UC benefits, stating that he was discharged for violating Employer's work rule regarding risk-associated behavior when he broke a sensor on an AGV while moving a safety cone.  (Internet Initial Claims, R. Item 2.)  The Scranton UC Service Center found that Claimant was not ineligible for benefits under Section 402(e) of the Law, concluding that Employer did not meet its burden of proving that Claimant's actions constituted willful misconduct.

Employer appealed to the Referee, asserting that Claimant's "continued violation of . . . [E]mployer's known safety policies and standards, despite progressive discipline, constitutes" willful misconduct.  (Employer's Petition for Appeal, R. Item 8.)  Employer stated that Claimant's conduct was "not the result of

_____

[2] We have reordered Claimant's arguments for ease of discussion.

2

incompetence nor ignorance of . . . [E]mployer's policies and expectations." (*Id.*)[3]

A hearing on Employer's appeal was held before the Referee on February 13, 2017. (Notice of Hearing, R. Item 10.) Employer appeared with its Tax Consultant Representative (Tax Consultant), one witness, Human Resources (HR) Specialist, and an observer. Documentary evidence was also entered into evidence.[4] Claimant appeared on his own behalf.

Following the hearing, the Referee made the following findings of fact:

1. Beginning April 25, 1989, the claimant was employed by [Employer]. The most recent position was a warehouse operator. The last day of work was December 14, 2016.

2. The employer has a safety policy requiring an employee to park the vehicle and exit it prior to removing a safety cone. The cone is to be stored away prior to continuing operation of the vehicle.

3. Any three safety violations within a 24[-]month period results in termination.

4. As of March 14, 2016, the employer issued the claimant three separate safety violations.

5. Instead of termination, the employer placed the claimant on a last chance agreement.

---

[3] Employer attached a letter of termination dated December 16, 2016, a return to work notice and Last Chance Agreement dated March 28, 2016, a Violation and Risk Associated Behavior Log, an Employee Counseling Notice, photographs, and Employer's Risk Associated Behavior and Corrective Action policy. (R. Item 8.)

[4] Numerous photographs were entered into evidence, including one showing an AGV, a cart-type vehicle similar to the one driven by Claimant, and the damaged sensor on the AGV. (*See* Employer's Exs. 1-4.) Two copies of Employer's Risk Associated Behavior Employee Acknowledgement were also entered into the record. The first copy was signed by Claimant on January 6, 2013, and the second updated version was signed by Claimant on April 2, 2015. (Employer's Exs. 5-6.)

6. On December 14, 2016, the claimant picked up a cone, while still in the vehicle and began operating the vehicle while holding the cone outside of the vehicle.

7. The cone damages [sic] a[n AGV] sensor causing $2200 in damage.

8. On December 14, 2016, the employer suspended the claimant pending an investigation.

9. On December 16, 2016, the employer discharged the claimant for the final safety incident violating the last chance agreement.

(Referee Decision, Findings of Fact (FOF) ¶¶ 1-9.) The Referee credited HR Specialist's testimony regarding Employer's safety policy and the Last Chance Agreement. (*Id.* at 2.) The Referee stated that Claimant's job was in jeopardy due to the Last Chance Agreement. (*Id.*) The Referee concluded that whether Claimant was inside or outside the vehicle when he picked up the safety cone, his continued operation of the vehicle while holding the cone outside the vehicle was improper, which violated Employer's safety policy and caused the damage to the AGV's sensor. (*Id.*) The Referee determined that Claimant did not provide any reason for his improper operation of the vehicle. (*Id.*) Accordingly, the Referee reversed the UC Service Center's determination and concluded that Claimant was ineligible for benefits under Section 402(e) of the Law.

Claimant appealed to the Board, arguing that he had additional evidence and witnesses that would establish he did not willfully disregard Employer's safety policies. (Claimant's Petition for Appeal to the Board, R. Item 13.) Claimant asserted that he has been "a good employee" of Employer for 27 years and has not had any other issues with safety prior to the incidents leading up to his discharge. (*Id.*)

4

The Board denied Claimant's request for a remand to supplement the record, noting that "[C]laimant d[id] not assert such evidence and witnesses were unavailable at the time of the hearing." (Bd. Order.) Reviewing the evidence presented at the hearing, the Board concluded that the Referee's Decision was proper under the Law. The Board amended the Referee's Finding of Fact No. 5 to read, "Instead of termination, the employer placed the claimant on a last chance agreement, under which the claimant could be discharged for violating a policy of the employer within 24 months of the execution of the agreement." (*Id.*) The Board also made an additional finding that Claimant hit, and thereby damaged, the AGV's sensor when he picked up the safety cone. The Board credited "[E]mployer's testimony that the claimant admitted he did not exit the vehicle when picking up the cone" and further concluded that Claimant did not establish good cause for his actions. (*Id.*) Accordingly, the Board "adopt[ed] and incorporate[d] the Referee's remaining findings and conclusions" into its Order and affirmed. (*Id.*) Claimant now petitions this Court for review of the Board's Order.[5]

---

[5] This Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014). "Substantial evidence is such relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Am. Gen. Life and Accident Ins. Co. v. Unemployment Comp. Bd. of Review*, 648 A.2d 1245, 1248 (Pa. Cmwlth. 1994). In determining whether the Board's findings are supported by substantial evidence, this Court must "view the record in the light most favorable to the party that prevailed before the Board, and give that party the benefit of all reasonable inferences that can be drawn from the evidence." *Big Mountain Imaging v. Unemployment Comp. Bd. of Review*, 48 A.3d 492, 494-95 (Pa. Cmwlth. 2012). The Board's findings are conclusive on appeal if the record, as a whole, contains substantial evidence to support the findings. *Mathis v. Unemployment Comp. Bd. of Review*, 64 A.3d 293, 299 (Pa. Cmwlth. 2013). "The fact that [a claimant] may have produced witnesses who gave a different version of the events, or that [the claimant] might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Moreover, it

On appeal, Claimant first argues that the Board erred in denying his request for a remand to supplement the record with additional evidence and witnesses. Claimant asserts that he did not realize he needed to present such evidence at the initial hearing before the Referee. Claimant contends, specifically, that: there is union paperwork requesting his monthly safety audits, which would have shown Claimant's good safety record; he has witnesses whose testimony would prove he did not act willfully; and he can produce measurements of the vehicle and safety cones that would show he would have had to get out of his vehicle to retrieve the safety cone.

Under Section 504 of the Law, 43 P.S. § 824, "the Board has the discretion to decide whether to grant a request for remand." *Fisher v. Unemployment Comp. Bd. of Review*, 696 A.2d 895, 897 (Pa. Cmwlth. 1997). Thus, this Court "will not reverse a decision denying a request for remand absent an abuse of discretion." *Id.* (citing *Flores v. Unemployment Comp. Bd. of Review*, 686 A.2d 66, 75 (Pa. Cmwlth. 1996)). "[A] remand hearing is generally granted to allow a party the opportunity to present evidence not offered at the original hearing because it was not then available." *Id.*

A review of the record reveals that Claimant did not argue in his appeal and request for remand to the Board that the additional evidence and witness testimony he wanted to present were not available at the time of the hearing. Consequently, the Board denied Claimant's request for a remand on that basis. (Bd. Order.) We find no abuse of discretion in the Board's denial of Claimant's request for a remand to present evidence and witnesses that he could have presented at the initial hearing.

is well-settled that the Board is the ultimate factfinder in UC cases and is, thus, empowered to make credibility determinations and resolve conflicts in the evidence presented. *Curran v. Unemployment Comp. Bd. of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000).

6

Turning to the merits, we first consider Claimant's argument that not all of the Board's factual findings are supported by substantial evidence. Claimant challenges Finding of Fact No. 2, in which the Board found that "[E]mployer has a safety policy requiring an employee to park the vehicle and exit it prior to removing a safety cone" and that the safety cone should be put away before continued operation of the vehicle. (FOF ¶ 2.) Claimant argues that there is no evidence of any written safety policy requiring an employee to park and exit a vehicle prior to removing a safety cone and, therefore, this finding is not supported by the record.

However, "[i]t is not necessary that an employer's reasonable order or directive be written in order for the Court to determine that an employee's violation thereof constitutes willful misconduct[.]" *Graham v. Unemployment Comp. Bd. of Review*, 840 A.2d 1054, 1057 (Pa. Cmwlth. 2004). In this case, HR Specialist credibly testified about the safety policy regarding the retrieval of safety cones, which requires that employees who are working in an aisle in the warehouse must park their vehicles in a designated safe haven, exit the vehicle, and retrieve the safety cone while on foot. (Hr'g Tr. at 8.) HR Specialist further explained that all employees are trained twice a year on the proper procedures for parking a vehicle in a safe haven and other issues regarding vehicles. (*Id.* at 11.) Claimant admitted that he was aware of Employer's safety policy regarding the movement of safety cones and that he did not follow Employer's safety policy on December 14, 2016. (*Id.* at 13-14.) Further, in response to the UC Service Center's oral interview question asking Claimant to provide a reason for his actions, Claimant responded that moving safety cones is something he typically does, but "the only difference is we usually get them on foot, but I did while driving the cart, I figured it wasn't going to hurt anything, I removed the cone." (Record of Oral Interview, R. Item 5.)

7

Because HR Specialist's testimony and Claimant's admission and response to the UC Service Center constitute "relevant evidence [that] a reasonable mind might accept as adequate to support [the] conclusion" that Employer has a safety policy regarding the movement of safety cones, it constitutes substantial evidence to support this finding. *Am. Gen. Life and Accident Ins. Co. v. Unemployment Comp. Bd. of Review*, 648 A.2d 1245, 1248 (Pa. Cmwlth. 1994).

Claimant also challenges Finding of Fact No. 6, in which the Board found that Claimant picked up the safety cone while still in his vehicle "and began operating the vehicle while holding the cone outside of the vehicle." (FOF ¶ 6.) Claimant argues there is no evidence establishing that he did not exit his vehicle prior to picking up the safety cone because there were no witnesses to the incident and Employer and the Referee just assumed he did not exit his vehicle. While Claimant testified that he could not recall whether he remained on the vehicle or got off to retrieve the safety cone that day, the Board found HR Specialist's testimony that Claimant admitted he did not exit the vehicle prior to picking up the safety cone to be more credible, which it was empowered to do. (Bd. Order; Hr'g Tr. at 7-8, 12); *see Curran v. Unemployment Comp. Bd. of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). Moreover, Claimant admitted to doing just this in his oral interview with the UC Service Center. Because HR Specialist's testimony and Claimant's admission constitute "relevant evidence [that] a reasonable mind might accept as adequate to support [the] conclusion" that Claimant did not exit the vehicle prior to picking up the safety cone, there is substantial evidence to support this finding. *Am. Gen. Life*, 648 A.2d at 1248.[6]

---

[6] Although Claimant includes Finding of Fact No. 7 in the list of findings he is challenging, he does not dispute that the damages were $2,200. Rather, Claimant explains that he was not

8

We next consider Claimant's argument that the Board erred, generally, in concluding that his actions in violating Employer's safety policy regarding the movement of safety cones constituted willful misconduct under Section 402(e) of the Law. Whether an employee's actions constitute willful misconduct is a question of law reviewable by this Court. *Reading Area Water Auth. v. Unemployment Comp. Bd. of Review*, 137 A.3d 658, 661 (Pa. Cmwlth. 2016). Section 402(e) of the Law provides, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e). While the Law does not define "willful misconduct," our Court has defined it as:

> (1) a wanton or willful disregard for an employer's interests; (2) a deliberate violation of an employer's rules; (3) a disregard for standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Phila. Parking Auth. v. Unemployment Comp. Bd. of Review*, 1 A.3d 965, 968 (Pa. Cmwlth. 2010). The employer bears the burden of proving a claimant's willful misconduct. *Spirnak v. Unemployment Comp. Bd. of Review*, 557 A.2d 451, 453 (Pa. Cmwlth. 1989). Where an employer alleges willful misconduct based on a claimant's violation of a work rule or policy, "the employer must prove the existence of the rule, the reasonableness of the rule, and" that the claimant violated the rule. *Ellis v. Unemployment Comp. Bd. of Review*, 59 A.3d 1159, 1162 (Pa. Cmwlth.

---

trying to break the sensor and that part of his job is to keep production moving in the warehouse. (Claimant's Br. at 8.) Even if Claimant did challenge Finding of Fact No. 7, there is substantial evidence to support that finding. HR Specialist testified that the sensor cost $2,200 to repair, Claimant acknowledged that was the correct amount of the damage he caused, and Claimant testified that he was not responsible for paying for the damage. (Hr'g Tr. at 7, 13.)

2013). If an employer makes a showing of willful misconduct, the burden shifts to the claimant to establish good cause for his or her actions. *Phila. Parking Auth.*, 1 A.3d at 968. Whether a claimant has good cause for his or her conduct is a question of law subject to our review and must be viewed in light of all of the attendant circumstances, "including the reasons for his or her noncompliance with the employer's directives." *Id.*; *see also Docherty v. Unemployment Comp. Bd. of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006). "A claimant has good cause if his or her actions are justifiable and reasonable under the circumstances." *Docherty*, 898 A.2d at 1208-09.

As previously stated above, Employer established it has a safety policy regarding the retrieval of safety cones. (FOF ¶ 2; Hr'g Tr. at 8, 11.) Employer also has a policy that three safety violations in a rolling 24-month period would result in termination, and that, in Claimant's situation, any violation of Employer's policies within 24 months of the issuance of the Last Chance Agreement[7] would result in immediate termination. (FOF ¶¶ 3, 5 (as amended by the Board); Hr'g Tr. at 3-4, 8-9.) Claimant admitted that he was aware of Employer's specific safety policy regarding the movement of safety cones and that he did not follow Employer's safety policy on December 14, 2016. (FOF ¶ 6; Board Order; Hr'g Tr. at 7-8, 13-14.) HR Specialist also testified that Claimant "admitted he did not exit the vehicle when

---

[7] In her testimony, HR Specialist identified Claimant's three prior write-ups for safety violations, which occurred in February 2015, January 2016, and March 2016, as triggering the issuance of the Last Chance Agreement. Rather than terminating Claimant after the March 2016 incident, Employer and Claimant's union entered into the Last Chance Agreement in an effort to avoid arbitration and to bring Claimant back to work. The Last Chance Agreement states that Claimant's employment status is on a "last chance" basis and that "[a] violation of [Employer]'s policies and procedures, especially as related to safety, within 24 months from the date of this letter will result in immediate termination." (Employer Letter and Last Chance Agreement, R. Item 8; Hr'g Tr. at 2.)

picking up the cone." (Bd. Order; Hr'g Tr. at 8, 11.)  Such testimony supports the conclusion that Claimant violated Employer's safety policy.  In turn, because this violation of Employer's safety policy occurred within 24 months of the issuance of the Last Chance Agreement, the terms of which Claimant indisputably was aware, it resulted in Claimant's violation of that Agreement and his discharge.  (FOF ¶¶ 4-9; Hr'g Tr. at 3-4, 7-8, 11.)  Thus, Employer met its burden of proving that Claimant violated a known work rule thereby engaging in willful misconduct.

Claimant argues, however, that his actions do not constitute willful misconduct because he did not intentionally or willfully disregard Employer's safety policy.  We disagree.  Despite his arguments to the contrary, "Claimant knew of [and admitted to] the existence of the [safety policy], specifically failed to follow it by [removing a safety cone] without [first parking and exiting the vehicle] and, as a result, hit the [sensor on an AGV, thus causing damage to the sensor,]" and this failure constitutes willful misconduct. *Heitczman v. Unemployment Comp. Bd. of Review*, 638 A.2d 461, 464 (Pa. Cmwlth. 1994) (holding that the claimant's violation of a known work rule that required drivers to walk around their truck before reversing the truck, which resulted in the claimant's truck hitting a light standard and causing damage to the truck and the light standard, constituted willful misconduct); (*see also* Hr'g Tr. at 13-14).  Claimant's conduct here was not inadvertent, "but [wa]s more akin to disobedience of a direct instruction." *Id.* at 464.

We also agree with the Board that Claimant has not established good cause for his refusal to comply with Employer's known safety policy.  Claimant attempts to justify his actions by asserting that part of his job is to keep production moving in the warehouse.  However, as the Board notes in its brief, Claimant did not testify to this at the hearing, and further, "trying to save a few seconds of time is not good

11

cause to ignore a rule in place to protect the safety of employees." (Bd.'s Br. at 11.) Therefore, because Claimant knowingly violated Employer's safety policy and the Last Chance Agreement, and because Claimant has not established good cause for violating that policy, the Board did not err in finding Claimant ineligible for benefits pursuant to Section 402(e) of the Law.

Accordingly, the Board's Order is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael J. Baker,                          :
                    Petitioner             :
                                           :
                    v.                     :     No. 678 C.D. 2017
                                           :
Unemployment Compensation                  :
Board of Review,                           :
                    Respondent             :

# **O R D E R**


    **NOW**, December 20, 2017, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.


_____
**RENÉE COHN JUBELIRER,** Judge